## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2019, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John R. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.P.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

July 17, 2019

Court of Appeals Case No.
19A-JV-329

Appeal from the Vanderburgh
Superior Court

The Honorable Brett J. Niemeier,
Judge
The Honorable Renee A.
Ferguson, Magistrate

Trial Court Cause Nos.
82D04-1811-JD-2051
82D04-1811-JD-2094
82D04-1901-JD-78

**Pyle, Judge.**

# Statement of the Case

R.P. ("R.P.") was adjudicated to be a delinquent child for committing acts that would be Class A misdemeanor resisting law enforcement;[1] Class B misdemeanor disorderly conduct;[2] and two counts of Level 4 felony child molesting[3] if committed by an adult. The trial court awarded wardship of R.P. to the Department of Correction ("the DOC"). R.P.'s sole argument is that the trial court abused its discretion by committing her to the DOC. Finding no abuse of discretion, we affirm the trial court.

We affirm.

# Issue

> Whether the trial court abused its discretion by committing R.P. to the DOC.

# Facts

In November 2018, fourteen-year-old R.P. admitted to committing acts that would be Class A misdemeanor resisting law enforcement; Class B misdemeanor disorderly conduct; and two counts of Level 4 felony child

---

[1] IND. CODE § 35-44.1-3-1.

[2] I.C. § 35-45-1-3.

[3] I.C. § 35-42-4-3.

molesting if committed by an adult. R.P. specifically admitted that she had: (1) forcibly resisted a Vanderburgh County Deputy Sheriff; (2) engaged in fighting and/or tumultuous conduct; and (3) fondled or touched two children with the intent to arouse or satisfy her sexual desires. The two children lived with R.P. in her guardian's home. One of the children was nine years old and the other was eleven years old.

[4] The trial court found R.P. to be a delinquent child and ordered her to stay at the Indiana Youth Care Center ("the IYCC") for an evaluation pending the disposition of her case. During her stay at the IYCC, R.P. hit a corrections officer in the face and kicked her in the back. R.P. subsequently admitted committing acts that would be Level 6 felony battery of a public safety official if committed by an adult.

[5] At the January 2019 disposition hearing, Mr. Cook ("Cook") from the Vanderburgh County Probation Department recommended that R.P. be placed in a "sexually maladaptive youth program." (Tr. Vol. 2 at 29). According to Cook, Gibault was the only Indiana facility that offered such a program for females and it had a waiting list that was "a few months out." (Tr. Vol. 2 at 29). Apparently, the DOC has such a program as well, and Cook recommended that R.P. "be committed to [the DOC] to receive the treatment that she needs for the [sexually maladaptive youth] treatment[.]" (Tr. Vol. 2 at 29). According to Cook, the typical DOC program for sexually maladaptive youth takes six to nine months to complete, and if R.P. had to wait five months for a bed at Gibault, that could double the amount of time that she would be

detained. Cook also explained that she could not return to her guardians pending the availability of treatment at Gibault because two of her victims lived in the guardians' home. The State asked the trial court to follow Mr. Cooks' recommendations. Defense counsel responded that R.P. did not want to go to the DOC because there was "a certain stigma associated with that." (Tr. Vol. 2 at 32). R.P. had also "made it very clear [to defense counsel] that she [did] not want to wait at [the IYCC] for five months not getting any treatment." (Tr. Vol. 2 at 33). Defense counsel essentially asked the trial court to release R.P. until a bed became available at Gibault.

[6] The trial court explained that it did not want R.P. "to sit at the [IYCC] not receiving the appropriate treatment." (Tr. Vol. 2 at 34). The court further explained that DOC's program for sexually maladaptive youth was the same as Gibault's program and that there was no reason to delay R.P.'s treatment. Thereafter, the trial court issued an order granting wardship of R.P. to the DOC. R.P. appeals her commitment to the DOC.

# Decision

[7] R.P.'s sole argument is that the trial court abused its discretion by committing her to the DOC. The purpose of the juvenile process is vastly different from the adult criminal justice system. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). Specifically, the goal of juvenile proceedings is "*rehabilitation* so that the youth will not become a criminal as an adult." *Id*. (emphasis in original). To facilitate this goal, courts have a number of options available for juvenile

placement, including, a private home in the community, a licensed foster home, a local juvenile detention center, and State institutions. *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987).

[8] To assist juvenile courts in selecting amongst the available placement alternatives, the Indiana Legislature has provided guidance regarding the option selected for any particular child:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

IND. CODE § 31-37-18-6. Within those parameters, a juvenile court has discretion in choosing the disposition appropriate for each juvenile delinquent. *D.E. v. State*, 962 N.E.2d 94, 96 (Ind. Ct. App. 2011). We review a court's disposition for an abuse of discretion. *Id*. at 97. An abuse of discretion occurs if the court's decision is clearly against the logic and effect of the facts and

circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

[9] Here, our review of the record reveals that the State recommended that R.P. be placed in a sexually maladaptive youth treatment program. The DOC program was available immediately, and the Gibault program was not. In light of R.P.'s serious history, which included sexual acts committed against young children who lived with her, the trial court did not abuse its discretion when it found that that was no reason to delay R.P.'s treatment and awarded wardship of her to the DOC.[4] Accordingly, we affirm the court's commitment of R.P. to the DOC.

[10] Affirmed.

Riley, J., and Bailey, J., concur.

---

[4] The trial court also stated that its dispositional order was entered, in part, because R.P. had already participated in inpatient and outpatient services in Arkansas.